Good morning, Your Honors. Dan Hauser, appearing on behalf of the Point at Westport Harbor Homeowners Association, as Assinee of Mark Dodson, Edward Dodson, and Gabe Deuce. And I'd like to reserve one minute for rebuttal, please. Sure. Keep your eye on the clock, please. I'm sorry? Keep your eye on the clock, please, and I'll try to remind you as well. Great. Could you please tell why there's an occurrence? Certainly, Your Honor. And there has been some confusion because travelers have suggested that the occurrence has to be an act of the insured. That's not true. I'm looking at the language here. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Correct. That's the definition I'm using for occurrence, the one in the policy. Correct. Why would they say how there's an occurrence? Your Honor, courts have interpreted that exact same definition to mean that an occurrence is any unexpected event, specifically including water intrusion from construction defects, even if it's a continuous and repeated exposure to water intrusion. The site for that is Underwriters at Lloyds v. Valiant, 155 Washington Ave., 469, and also Travelers v. A.F. Evans, U.S. District, Lexus, 13489 and 188758. I didn't think that's what happened here. That is what happened here, Your Honor. What happened here is we had declaring appointed directors who had a duty to investigate a specific duty under the condominium declaration that's set forth at Supplemental ER 80 to do at least annual building envelope investigations. They failed to do so, then controlled transition to the unit purchasers. The unit purchasers inspected and investigated and found defects causing water intrusion and damage, and then sued the declaring appointed directors for breach of fiduciary duty for failing to find those defects and correct them before they caused property damage. Here, the occurrence is the exposure to water intrusion from construction defects. This case is really all about travelers' duty to defend and whether the complaint can be reasonably interpreted to allege any negligent conduct. Can you specifically go to the complaint and tell me where negligent conduct is alleged in the complaint? Yes. The key allegation is at ER 531 paragraph 11.5. The directors breached their fiduciary duty by acts or omissions, including failing to identify and correct defects that they should have known about, which has caused additional property damage. That allegation is explained further when you look at the requirement in the declaration at Supplemental ER 80 that these directors, when they initially controlled the condominium association for 20 months, were supposed to do an investigation to find those defects and correct them. Do any of your insurance policies with travelers have exclusions for construction defects? Well, this is a liability insurance policy. We're talking about a general liability insurance policy. So, no, not in a general liability insurance policy. It seemed like they were saying that you did, though, and I thought maybe they were talking about a different policy, and then I was trying to look for that policy. Can you explain how many policies you have and if some of them have such an exclusion but others don't? I'd like some help figuring that out. I think the point Travelers was trying to make is that the association could have brought a first-party insurance claim under its property insurance policy, which is a different policy, but they never brought that claim, and that policy is not in the record. And that policy has a construction defect exclusion, it sounds like? Correct. But this one, so you're suing under just the general liability policy. That one does not have such an exclusion. The association never made a claim directly to its insurance company. The association sued its original officers and directors for liability for causing property damage, and those directors then tendered a claim to Travelers and asked Travelers to defend and indemnify. Travelers originally refused to defend for the first 10 months or so based on the owned property exclusion, which it doesn't even attempt to justify now. It basically concedes that was unreasonable, and therefore we should be looking at coverage by estoppel. It looks like it's a practical matter. The directors suing themselves in order to get their liability insurance company to cover what should be insured, if at all, under a first-party policy with an appropriate endorsement. Your Honor, I understand the concern. This is a very unusual situation. It is, in fact. I've had a couple before. We even have a memo dispo in almost identical circumstances where we ruled against the board members who were doing this. Well, Your Honor, I think you're talking about the Far Northwest case, and the district court completely misunderstood that case. What happened there was Judge Martinez found a breach of the duty to defend under virtually the exact same policy, the exact same complaint. That order was never appealed, and, in fact, they just paid the defense costs. What we said in there in Far Northwest was we said that the damage resulting from turning a blind eye to problems both during and after construction was not an accident under Washington law. Exactly. Then later in Far Northwest, there was an issue, did they breach their duty to indemnify? That issue came up to the Ninth Circuit twice, and what the Ninth Circuit originally said was there was potentially causation because the failure to inspect could have caused property damage, but we now know that that director actually knew about the defects and actually knew they were causing damage, and so, therefore, there was no occurrence. There was no accident because the property damage was known, and that's what this court ruled. Because in that case, there was an admission to intentional conduct, turning a blind eye, but your argument is we don't have that here. It's just basically an analysis of how the allegations have been played in the complaint. Well, there are two important differences. One, here we have the declaring appointed directors testifying under oath. They never knew about any defects, never knew about any damage, never even realized there was a conflict while they were serving on the board, and that's at ER 27 to 28 and 37 to 39. And then we also have the difference between the duty to indemnify versus the duty to defend. With respect to the duty to defend, it's broader than the duty to indemnify, and if there's any potentially covered allegation in the complaint, then there's a duty to defend. You look at the specific language of the complaint, and it does allege that these directors should have but failed to identify and correct defects that were causing property damage. That is an allegation of negligent conduct. Where the district court got off track was it focused on another allegation that said these directors were constantly loyal to the declarant and acted to promote the declarant's interest. The district court said that precludes any allegation of negligence, but in fact there is no direct conflict because negligence can be either an affirmative act or it can be an omission, and here the key allegation is an omission. They had a duty to but failed to inspect for, identify, and correct defects before they caused damage. It's really kind of a conversion of a negligent failure to disclose at best or fraud at worst claim into a claim for damages because of bodily injury or property damage. No, Your Honor, it's not. There was no failure to disclose because they never knew about these defects. There was a failure to do the investigation they were required to do. You would have a negligent failure to disclose if you have a duty to find the defects. Yes, a negligent failure to find and disclose the defects. I would agree with that, Your Honor. And those aren't covered by the policy? Yes, that is covered by the policy, Your Honor. The policy covers liability because of property damage caused by an occurrence. We've already gone over the definition of an occurrence being accidental water intrusion from construction defects. If these directors become liable because of that property damage, because that property damage occurred on their watch during the 20 months when they were supposed to be finding the defects and preventing them from causing property damage, then they can become liable because of that property damage and that liability would be covered. Because the complaint alleged that liability, they had a duty to defend. But there's been an amount of money agreed upon at this point, right? I'm a little bit confused about whether we're in duty to defend now or duty to indemnify now that you had sort of a settlement already. Well, I would agree that the court should also remand on the duty to indemnify because in terms of the actual facts about whether these directors actually knew or did not know about property damage, the only facts in the record are that they actually did not know, meaning there would be a duty to indemnify because you're correct. There has been a settlement and there has been an agreed upon liability amount. There are potential ways that even if there was a duty to defend but not indemnify, that that amount could still be, travelers could still be required to pay that amount. For example, if the duty to defend was denied in bad faith without reasonable explanation, then the association could be entitled to coverage by estoppel. And the court here refused to consider that argument because it said, and it's true, that the association did not file a timely counterclaim. But what the court failed to realize is that the association's answer and affirmative defenses, which were timely filed, actually set forth the counterclaim. And what the answer says... But you can't agree that it wasn't an abuse of discretion to reject your counterclaims because they were late. What do we do now? I'm a little bit confused, like what will happen if we say there is a duty to defend here, but now there's nothing to defend anymore? Is that sort of the posture at this point? No. If there's a duty to defend, then there are serious consequences that flow to the insurer because of that. Regardless of whether or not there is bad faith. Well, I think the question really goes to, as a practical matter, what happens? The counterclaim's too late. Now we've got the summary judgment issue on the duty to defend. We send it back. Then what happens? Well, Your Honor, if you were inclined to rule that the counterclaim was too late, then I still believe you'd need to remand back to the trial court to reconsider its discretion regarding the counterclaim in light of the fact that travelers breached... So now there's only duty to defend on the table. What happens to the lawsuit? What's the posture upon remand? Well, in the answer, let's say we set aside the counterclaim. In the answer, the association did request its costs and attorney's fees under Olympic Steamship as an affirmative request for relief, and it also pled all the specific allegations of the counterclaim, including unreasonable failure to defend, bad faith failure to defend, mischaracterizing the allegations of the complaint, all the same facts that were alleged in the counterclaim, and that's at ER 610 and 611. So I would submit that the court needs to take another look at those affirmative defenses and also look at Civil Rule 8C2, which says if a defense is mistakenly called a counterclaim or a counterclaim is mistakenly called a defense, the court should see through that and do substantial justice, and if it's really a counterclaim, treat it as a counterclaim. That's what happened here. But say we disagree. Just hypothetically, we disagree, and we think that that needed to be in the counterclaim and it was too late. But say we agree with you that there's a duty to defend. Is there anything left? Do you get anything? Sure. There is something left, and that is just whether or not travelers correctly handled this claim, violated this clause. It doesn't matter. We don't answer questions in the sky. We answer a duty to defend question where there's something to defend, but when the case is all settled, the only way it could possibly arise is in litigation over defense costs. You had a duty to defend. You didn't. I bore expenses. I had to pay a lawyer $100,000 to defend. You owe me $100,000. Right. Are there such fees? That's all you can get at a duty to defend. What about the costs and fees in the coverage action? Right. We've asked for those in our answer. I'm not talking about the underlying action. In the coverage action, the only duty to defend applies to the underlying third-party action. You ask me as a practical matter, is there any difference should you make a ruling if there's a breach of the duty to defend, but the counterclaim is too late? In the coverage action— This doesn't make any sense. In a coverage action, a declaratory judgment action regarding coverage, a liability policy does not provide for duty to defend. A quizzical look does not make it true. This is elementary insurance law. Your Honor, in the coverage action, we're talking about the duty to defend in the underlying case. If there was a breach of that duty to defend— But you're arguing now that so long as there's a coverage action going on, there's a duty to defend in the coverage action. That's not true. No, that's not what I'm saying, Your Honor. What I'm saying is that there are costs and fees in dispute in the coverage action. If Travelers is wrong and it wrongfully breached its duty to defend, the court needs to explain that so that the association can recover its costs and attorneys' fees in the coverage action. Costs and fees in the coverage action. You just said it again. I think what you mean is recover— you're saying recover in the coverage action the fees from the other action. Is that what you're saying or are you saying something else? What money are you talking about? Money incurred in the third-party claim, if there was one, or money incurred in the coverage action? Money incurred in the coverage action. Assuming you set aside the counterclaim, there's still money at stake in the coverage action in terms of costs and attorneys' fees. The way the duty to defend is raised in the policy is duty to defend against the third party. Somebody slips and falls on the stairs and he sues the insured. I warn you, you're not in front of a jury, so the facial expressions do not constitute a logical argument. I apologize, Your Honor. I've got to hear an argument here. If I'm misunderstanding, I want to be educated. You are misunderstanding. This comes up in the context of the court's question, what happens if there was a breach of the duty to defend but there are really no damages for that because the counterclaim is set aside? Should we just throw up our hands and say nothing and let travelers wrongfully deny coverage? My answer to that is if that's the way you're going to go, the court should still explain that there was a wrongful coverage decision in the underlying action. That has consequences in the coverage case because in the coverage case, the association may be entitled to costs and attorneys' fees incurred in the coverage case under a case called Olympic Steamship. If the policyholder prevails, it receives its attorney's fees. Thank you. Our questioning actually has taken you over time, but I'll give you a minute for rebuttal. Let's hear from counsel for the insurance company. Good morning. Thomas Leather on behalf of the Travelers' Indemnity Company of America. I'd like to start by addressing some of the court's questions. Let's go ahead and start there because I'm not sure that I quite understood counsel's answer as to a practical matter. What happens? Let's say that we do agree the counterclaim was basically brought too late and not properly brought and that's gone, but if we determine that there was a breach in the failure to defend, then what happens to the case? I think it was an excellent question and a very practical question, and I think the answer is there is nothing left. And why is that? Because the defense obligation is relevant at this point. There's nothing left to defend. The case is settled. Second, my recollection is, and Mr. Hauser, correct me if I'm wrong, is the entities were defended by other insurers and all those defense costs associated with the underlying action have been paid for. The only claim they arguably have is for their attorney's fees in this coverage action. I think all of that is a matter of the quote-unquote bad faith claim that was not properly pled because it was not set out as a counterclaim timely. So I don't believe there's anything left. Let's see if I've got this right. To the extent that the third-party claim should really be regarded as such, other insurance companies defended it. That is correct. That is correct. So there were other policies at issue? Why did that happen? There were a number of other policies at issue, and there were a number of other parties at issue too. And one thing I felt appropriate to bring to the Court's attention, there is a related case in the federal court entitled Granite States Insurance Company versus The Point and Integrity, who was the general contractor. It involved the same directors and officers. That is case number C14-508-SBHS. There's a decision as of January 2015. It is Lexus 2712, and that is the case where Judge Settle found that there was a breach of the duty to cooperate by these same parties because they entered into a stipulated settlement, which is exactly what happened here. Help me on something else. As I now understand the plaintiff's claim, they're claiming that the occurrence was an unanticipated drainage of water into the structure that damaged the structure and that this was an accident constituting an occurrence and that the tenants or the homeowners association sued them on account of this and travelers failed to defend or indemnify. Have I got it right so far? You have it right so far except for this is not a construction defect case. The construction defect case was actually the case I just mentioned where they sued Integrity, who was the actual contractor. This is a pure claim against these directors and officers for breach of their fiduciary duty. Appellant has argued or suggested this is just like all the water intrusion construction defect cases that you see, and he mentioned a couple of cases, some of which I've been involved in. Those are construction defect cases. That's not this case. This is a breach of the fiduciary duty claim. That's all that's left in this particular case. Is the other case completely wrapped up? I'm not sure. I've heard suggestions that it may be settled, but I was not involved. I don't know. I do not know. So we don't have the third-party claim here in any form? We do not have a third-party claim in any form. This is really a claim, and there's really two issues for the court. The first issue is, does the breach of fiduciary duty constitute a claim? There's something about that one that I'm having trouble understanding. Usually the breach of fiduciary duty claim arises when the people that buy the condos sue the developers for one or another breach of fiduciary duty in the transactions, either in selling them the units or maintaining them or sitting on the board or something like that. I'm not aware that anyone sued the homeowners association directors except the homeowners association directors. This is the homeowners association, in essence, suing itself. And the whole purpose, of course, of third-party liability insurance is protection against a third party. That's not what we have here. So here it's the people who are supposed to have breached their fiduciary duty are sitting on a board, and the board is suing, and they're directing the board to sue themselves for breach of fiduciary duty. Correct. And that's really what the second issue is. The first issue is this occurrence issue, and I think our position is laid out. I think the Far Northwest case does support that. On that second issue, the suing themselves issue, your argument there is they're not insured for that purpose. Correct. And that's the second issue, which Judge Settle didn't get to, but we think is equally applicable, and that issue is they are only insured. Let me back up. There's two types of coverage you see in these cases. You see directors and officers coverage, D&O coverage. And D&O coverage actually can apply to situations where a corporation sues its directors and officers. Yeah, D&O routinely applies to breach of fiduciary duty when a corporation sues its officers. Correct. And in this case, these directors have. It sometimes is kind of analogous. The corporation is really short of money, and they figure they can blame it on one or two or three of their officers, and they basically sue themselves and collect the money from the insurance company, maybe give a covenant not to sue to the officer who's colluding. Correct. But your D&O policy had an exclusion for this. Correct. But your general liability one didn't. So why not? I mean, it could have, right? Very good question. And to wrap up the prior question, correct, there's no coverage for D&O under the D&O policy in this case. This is presented under the CGL policy. Why didn't it? The CGL policy doesn't need to have what's called a cross-suits exclusion in this context because it's answered by what is the scope of the insured status. These directors and officers only have coverage under the CGL policy for acts involving their duties as a director and officer. That's the scope. If one of their duties was a duty of care, why wasn't that breached here? I mean, I know you cited some cases saying that an entity can't sue itself like this, but I read them and I didn't think any of them really directly addressed this. So I feel like this is a question that we, at least from the briefs, didn't have a case directly addressing. I do think, with all due respect, I do think Malazzo does answer the question. Malazzo really hasn't. Malazzo's never been overturned. I think Hagerty as well answers the question, the Hagerty decision, because I think the point is what all those cases say is you cannot breach your duties and at the same time qualify as an insured for acts or omissions arising out of your duties. So the question then becomes, well, then, really, what is the benefit to this coverage? You can act as a director or officer and be fulfilling your duties as a director and officer. And there's coverage for that when you're involved with a third-party claim. And a good case that talks about that actually is cited in the Rizzo decision. Okay, go ahead. If the court's interested, there's a case called Barnett v. Fireman's Fund, 108 Cal App 657. And to comment on Rizzo, because the appellant's only argument in response to the Malazzo decision is Rizzo. Rizzo's not on point in any way. Rizzo is whether or not someone qualified as an insured because of the scope of their employment. Rizzo does not overturn Malazzo. Rizzo actually explains why Malazzo is the correct statement of the law. Rizzo actually says that the policy language in Malazzo is a narrower grant of coverage. The definition of scope is narrow. And that's exactly the same language functionally that we have in this case. The scope of insured has to rise out of that director's and officer's duty. This Barnett case that's cited in Rizzo says, look, there can be situations where a director or officer is advancing the interests of the corporation, and a third party sues them. That's covered. But when the director or officer is adverse to their duties as a director and officer, they don't qualify as an insured. Well, what if they're negligent? You're talking about a situation where they act adversely, essentially acting intentionally. But what if they have this dual responsibility as employees of the corporation, as directors of the homeowners association, but they don't do anything, and the defects were obvious, things were leaking all over the place, and nobody took any action? Purely negligent and explicitly pled in the complaint. Would that be a different situation in terms of the duty to defend? It could be if there was a third party who was damaged in making claims. And you're absolutely right. That's not pled in this complaint. In fact, it's not this case. But let's say hypothetically a director and officer was fulfilling their duties, thus they qualified as an insured under the scope of the coverage. And in fulfilling their duties, doing what they're supposed to do, they acted negligently and there was resulting third parties who made claims against them. Agreed that would be covered. Clearly not this case. And that's exactly what Barnett says. But the homeowners association represents the homeowners, and they had damaged property. So why can't the homeowners association say these officers were negligent, they weren't paying attention, and this damage happened, and so we're suing through the association on behalf of the owners who had property damage. What's the problem there? If it was a construction defect case, hypothetically, I could understand that point. But they're not making a construction defect case. What the homeowners are saying is you directors and officers breached your fiduciary duty. And as the Haggerty case and Malazzo say, it's completely illogical to say someone can qualify as an insured because the only way you qualify as an insured is if it's liability arising out of you fulfilling your duties and at the same time be sued for failing to fulfill your duties. Well, I think the complaint can be construed generously. They're supposed to be construed generously in this instance. And I think what we have to figure out is whether these directors were wearing the homeowners association director's hats when the various alleged breaches occurred. And so as I look at Claim 8 in the complaint, it says, duty to act in a reasonable and prudent manner, duty of loyalty and care, breaches by failing to disclose defects, identify defects, fund repairs, provide adequate reserves. It all sounds like actions that were undertaken by the directors when they were wearing the director of the homeowners association hat to me. I mean, if you really generously construed, I think there's an argument that those are allegations of negligent conduct. Can't you? I don't agree. I think particularly if you read them in light of what they're attempting to establish in the breach of fiduciary duty claim, in order to establish the breach of fiduciary duty in that context, you have to, in essence, you have to assert it as an intentional conduct, as a knowing violation of your duties. And I think that's exactly what the result in Far Northwest was. There's no way you can, in that context, act negligent in that regard. Now, if they were building, I mean, there, there was this admission of actual knowledge. We don't have an admission of actual knowledge here. Right. Or even an allegation, I think, of actual knowledge of the defects. Far Northwest. And there's a much more established factual record in Far Northwest. Agreed. But I think here what we're looking at is the face of the complaint. And in the face of the complaint, as Judge Settle pointed out, there is no allegation of occurrence, no allegation of accidental loss. I will note, and I think both sides agree with this point, under Washington law, specifically the Overton case, the duty to establish a trigger of coverage, including the obligation to show an occurrence, meaning an accident, is not on the insurance company. It's on the insurer to establish that. And on this record, on this complaint, I don't think they get there. But that's just the occurrence issue. Again, a separate, distinct issue that the court didn't get to was the Malazzo issue. And I will note Malazzo's never been argued. Did you argue this, what you're calling the Malazzo issue, did you argue that in the district court? It was argued in the district court. It was briefed and argued. There was no oral argument on this particular motion. Can you tell me where it was in the briefs in the district court? Yeah, I can, actually. It is in document 30. And it is, it starts out in the issues presented on page 6. It's the very first issue presented, whether defendants are insured under the policy, given the scope of what an insured is. And Malazzo is cited in the briefing. That argument seems a little bit like two issues, though. Your argument that the board essentially can't sue itself, maybe it's a separate argument from they're not insured? Because I felt like you were sort of making two arguments. And it was the one about you can't sue yourself that I felt like wasn't obvious. You'd made it so clearly. Can you help me with that, whether this is one argument or two? It's really, it is two arguments, but they weave together. Fundamental, and there's a fundamental threshold issue, which is third-party liability coverage does not provide coverage for people suing themselves. And, frankly, you don't need to have a cross-suits exclusion to get there. I thought it was a little more refined than that. I thought you were saying alternative theories, either of which you prevail on. Number one, there was no occurrence. And number two, the homeowners association directors are not insured for purposes of a suit against them by the homeowners association for breach of fiduciary duty. Just two separate and independent arguments, either of which you argue you should prevail on. That is exactly correct. Those are the two issues before the court. And this other issue about not being able to sue yourself really weaves into that second point. It just doesn't fit within the scope of what they're qualified as and insured for. One additional point. My question was, I thought they didn't necessarily weave, and they don't have to do any kind of weaving. You've just got two alternative theories here for an affirmance. And you keep saying they weave, and that's where I get confused. I'm sorry, Your Honor. Let me maybe clarify. There are two separate issues. Whether there's an occurrence, separate and distinct, even if you found the complaint pled an occurrence, even if you got there. The alternative argument. The alternative argument is they don't qualify as an insured because it doesn't fit within the scope of what they're insured for. That's reasonable. It has a question, and then we'll wrap it up. I just want to come back to where we started at the beginning of your argument about this idea that none of this matters because there's nothing left to pay anymore. I didn't see that in your brief. I mean, I know you said that they lost their counterclaims, but your brief talked about all these things we've just spent the last 15 minutes talking about, and I don't understand. I mean, have you waived the point that none of this matters because you didn't really tell us this? I'm trying to figure out whether we even need to talk about any of this anymore. No, I think it's just directly in response to the Court's questions to Mr. Hauser. It's not brief because, frankly, I think those issues all arose after this case was decided. I mean, the case resolved itself, so it hasn't really come up in any of the briefing, and it wasn't really an issue before Judge Settle at the time. I'm just answering the practical question. One comment I will make just to clarify. But I don't understand that. You knew that these settlements had been made, so nothing has happened since the briefing, has it? I don't understand what you just said. What has happened since the briefing, to my knowledge, is, and again, this is just based upon what I know. I'm not sure if it's gone completely accurate, but the defense bills were paid by the other liability insurers. I believe the settlement has been concluded at this point as far as funding and everything that happened on the settlement, but I don't know that for necessarily a fact. But you're saying because they entered, so they set these amounts, $1.2 million each or whatever. That had happened before your briefs, I think. I believe so. And so that meant there was nothing to defend anymore, I think you're saying. That's totally separate from whatever happened in other cases or whatever. So if you're now saying there's nothing left to defend, why didn't your briefs start out and say, there's nothing left to defend. We should win on the counterclaim point. There's nothing left to defend. We all go home. By the way, we win anyway. But instead it's like you only talked about the point about we win anyway, and so now I'm not sure we even need to reach the thing that your whole brief is about. Well, I still think the coverage issues really control. They do matter. Why? I thought the reason that we were here was who's going to wind up holding the bag, paying for the construction defects, and that the duty to defend expenses were the disallowed counterclaim. I think the disallowed counterclaim were all the extra contractual claims, the claims that the insurance company acted in bad faith, that there's coverage by estoppel. Those were the disallowed counterclaims. There's potential collateral fees and costs at this point that counsel's relying on. I'm not sure that quite works. We'll have to think about that some more. But thank you very much for your argument today. I believe that's correct. Thank you very much. Let's put a minute up for rebuttal. Thank you, Your Honors. On the suing yourself point, there is no such public policy in Washington that says you can't sue yourself and recover under a liability insurance policy. That's Washington Public Utility v. PUD No. 1, 112 Washington 2nd and 1. It's also false to say that you have to sue for an intentional breach of fiduciary duty. You can sue for negligent failure to prevent damage. Frankly, counsel, I know we've gone through this before, but just as a practical matter, I'm just not sure what we're all doing here, what you're really doing here. There's an argument that you've raised concerning some consequences from the failure of a duty to defend in terms of costs and fees. By the time you go out and get on the road, the attorney's fees clock is still ticking. But I take your point, and we'll have to think about that and talk about that. We don't conference beforehand, so we'll have to see if there are some collateral issues that are left to be determined since the case is now settled. Your Honor, even if other insurers took their duty to defend seriously and paid, that still doesn't excuse bad faith refusal to defend, and there are still remedies for bad faith refusal to defend under Washington Supreme Court authorities. But that was your counterclaim. Well, that allegation was made in the timely answer in affirmative defense. Affirmative defense, I think, are different than counterclaims. But we take your argument, and the matter is submitted for decision. Thank you very much to both sides for your argument today.
judges: Kleinfeld, Nguyen, Friedland